NO. 07-01-0489-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JULY 1, 2002


______________________________



EQUITABLE LIFE ASSURANCE SOCIETY 


OF THE UNITED STATES



 Appellant


v.



DAVID FISH, INDEPENDENT ADMINISTRATOR OF 


THE ESTATE OF SUSAN BEACH FISH, DECEASED, 




 Appellee

_________________________________



FROM THE 64th DISTRICT COURT OF HALE COUNTY;



NO. A-31570-0105; HON. JACK MILLER, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Equitable Life Assurance Society of the United States (Equitable) initiated this
restricted appeal to reverse the default judgment entered against them and in favor of
David Fish (Fish), independent administrator of the estate of Susan Beach Fish, deceased. 
The grounds urged on appeal purportedly warranting reversal are two. Specifically,
Equitable contends that entry of the judgment was error because Fish failed to state (in its
live pleading) a cause of action upon which relief could have been granted and the return
of service was defective. (1) We reverse the default judgment.

 The record reveals that citation was issued. The entity designated to be served was
"Equitable Life Assurance Society of the United States by serving registered agent: Paula
Holderfield[,] 12377 Merit Drive, Suite 1800[,] Dallas, Tx 75251." The officer's return of
service discloses that citation was served "at 12377 Merit Dr #1500 within the County of
Dallas at 1:40 o'clock pm [sic] on the 16th day of July, 2001, by delivering to the within
named Paula Holderfield in person . . . ." (Emphasis added). As can be seen, the suite
number differed between the designation of the person to be served and the designation
of the person who was served. So too did the name of the entity to be served differ. While
the citation was directed to "Equitable Life Assurance Society of the United States by
serving registered agent: Paula Holderfield," the return identified "Paula Holderfield"
without reference to her capacity as registered agent of the defendant. Given the
discrepancy between the name of the party to whom the citation was directed and the
name of the individual upon whom it was served, the "original return fails absolutely to
show service on the defendant . . . ." Barker CATV Const., Inc. v. Ampro, Inc., 989 S.W.2d
789, 793 (Tex. App.--Houston [1st Dist.] 1999,no pet.) (holding that because the return
stated that citation was served on "'James Barker'" when the citation was directed to
"Barker Construction's registered agent 'James M. Barker, 128 Northwest Ellison,
Burleson, Johnson County, Texas 76028,'" the return of citation was defective); accord,
Verlander Enterprises, Inc. v. Graham, 932 S.W.2d 259, 261-62 (Tex. App.--El Paso 1995,
no writ) (holding the same). Consequently, because the return was fatally defective, the
default judgment cannot stand. Id. This coupled with the record's disclosure that the
elements of a restricted appeal have been satisfied leads us to conclude that Equitable's
second issue should be sustained. (2) Id.

 Accordingly, the judgment is reversed and the cause is remanded.


 Brian Quinn

 Justice

 Do not publish. 

 
1. Because the second ground is dispositive, we address only it.
2. Under Texas Rule of Appellate Procedure 26.1(c) and 30, a party who 1) has not participated in the
hearing that resulted in the judgment complained of and who did not timely file a post-judgment motion,
request for findings of fact, or notice of appeal and 2) subsequently files a notice within six months of the
judgment may take a restricted appeal. The record at bar does not disclose that Equitable participated in the
hearing from which judgment arose or filed the documents mentioned by Rule 30. However, it does reveal
that Equitable tendered a notice of appeal approximately three months after the default judgment was signed. 



"64" Name="Medium Shading 2 Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-0008-CR

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL B

 

JANUARY 31, 2010

_____________________________

 

DANIEL TOLOPKA, II, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

_________________________________

 

FROM THE 278TH
DISTRICT COURT OF LEON COUNTY;

 

NO. CM-06-522;
HONORABLE KENNETH KEELING, JUDGE

_______________________________

 

 

Before
QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Daniel
Tolopka II appeals from his conviction of murder and the resulting sentence of
ninety-nine years in the Texas Department of Criminal Justice - Institutional
Division.  Through three issues,
appellant contends the trial court abused its discretion in admitting evidence
obtained through two search warrants and in admitting photographs of the
victims injuries.  Finding no error, we
affirm.

 

 

 

 

 

Background

 

 

            Appellants indictment charged that
he intentionally and knowingly caused the death of Joseph Clampitte III, by
shooting him with a firearm.[1]
Following his plea of not guilty, the matter proceeded to trial by jury.  Appellants evidence included the testimony
of a crime scene reconstructionist and a private investigator, and his own testimony.

 

            Appellant does not challenge the
sufficiency of the evidence supporting his conviction, so we will recite only
so much of the evidence as is necessary to an understanding of the issues
presented.  Appellant lived on thirteen
acres in Leon County.  Clampitte lived
nearby, their homes separated by a few hundred feet.   From the evidence presented, the jury could
have determined that shortly before noon on June 3, 2006, appellant walked out
on his property, wearing his CZ 75 B 9mm pistol.  He soon discovered two of his show hogs had
escaped his property and went to look for them, eventually entering Clampittes
property on his search.

            Appellant testified he encountered
Clampitte.  He said Clampitte confronted
him, telling him he had shot appellants hogs and threatening to shoot
appellant.  Appellant thought Clampitte
had a gun.  He pulled his pistol and shot
Clampitte.  The Dallas County Medical
Examiner testified Clampitte died as a result of multiple gunshot wounds, with
the fatal wound coming from a shot in the back of Clampittes head. 

 

            A while later, appellant called the
911 operator with the report he heard an argument and shots and saw someone
running away from the scene.  Officers
responded, finding Clampittes body lying on his property underneath a tree
from which the carcass of a hog was hanging. 
After officers interviewed appellant several times during the day and
were unable to find tracks of the person appellant said he saw run away,
officers obtained a warrant to search appellants property for 9MM and 45
caliber weapons and ammunition.  An
officer found a CZ 75 B 9mm pistol in an unused stove in appellants house.[2]  Testing in February 2007 revealed the CZ
pistol matched spent casings found at the murder scene and bullets recovered from
Clampittes body.  A second search
warrant was issued in April 2007, pursuant to which officers seized additional
9mm casings and spent bullets from locations on appellants property he had
used for target practice.

            Appellant testified at trial that he
lied to the 911 operator and to officers who spoke with him that day because he
was scared.  He testified he shot
Clampitte in self-defense.

Analysis


Search
Warrants

            In appellants first
and second issues, he argues the two warrants, the first issued on June 3,
2006, the day of the murder, and the second on April 16, 2007, both used to
obtain evidence linking him to Clampittes shooting, were obtained using
affidavits that were misleading due to omissions of material facts and failed
to establish probable cause.  As a
result, appellant contends, the trial court erred in failing to grant
appellants motion to suppress and in admitting evidence obtained through each
of the warrants.

            On the day of the murder, appellant
voluntarily turned over to officers two weapons, a 9mm Ruger pistol and a 9mm
rifle.  The Ruger pistol was contained in
a CZ box but appellant told the officers he had lost his CZ pistol on his
property about a month earlier.

On that same day, one of the deputies
prepared an affidavit, pursuant to article 18.02(12) of the Code of Criminal
Procedure,[3]
seeking a warrant to search appellants residence.    

            The April 2007 warrant was issued
pursuant to Code of Criminal Procedure article 18.02(10).[4]  It authorized a search of appellants 13-acre
property to determine if a CZ 75 B model 9mm is in the pasture of said
premises as stated by the party, and further authorized seizure of 9 mm spent
shell casings, spent 9 mm projectiles, CZ 75 B model 9 mm handgun and other 9
mm firearms. 

 

            The April 2007 warrant was based on
the affidavit of a deputy sheriff who had been on appellants property with him
previously.  The affidavit said the
deputy had, some two years before the murder, seen appellant fire a CZ 75 B 9mm
handgun into a dead tree on the property, and that appellant had not then
recovered the spent shell casings.  It
also recited that after the murder deputies had seen a dirt berm, old tires, a
washing machine and numerous trees and posts on the property with apparent
bullet holes, indicating they had been used for target practice, and said spent
shell casings would remain in the nearby dirt and bullets in the objects into
which they were fired.  The affidavit
further said that the spent target-practice casings and bullets located on the
property pursuant to the warrant could be compared with the casings recovered
near Clampittes body and the bullets found in Clampitte, providing further
evidence of appellants guilt.   

            The affidavit also recited
appellants statement to officers that he had lost a CZ 75 B 9mm pistol in his
pasture about a month before the murder, and said a search for a 9mm CZ 75 B
will determine the credibility of [appellant] and its absence will provide
evidence that [appellant] committed [the murder]. The affidavit omitted the
facts that a CZ 75 B 9mm pistol had been recovered from appellants house
shortly after the murder, and that tests already indicated it was the murder
weapon.

Applicable Law

Standard
of Review for Motion to Suppress

            A trial court's ruling on a motion to suppress is
reviewed for abuse of discretion.  Oles
v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999).  See also Guzman v. State, 955 S.W.2d
85, 89 (Tex.Crim.App. 1997).  An
appellate court must view the evidence in the light most favorable to the
court's ruling.  State v. Ballard,
987 S.W.2d 889, 891 (Tex.Crim.App. 1999). 
When there are no explicit findings of historical fact, we review the
evidence in the light most favorable to the trial court's ruling and assume the
trial court made implicit findings of fact supported in the record. Swain v.
State, 181 S.W.3d 359, 365 (Tex.Crim.App.2005), cert. denied, 549 U.S. 861, 127 S.Ct. 145, 166 L.Ed.2d 106 (2006); Estrada
v. State, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005).  In a suppression hearing, the trial court is
the sole judge of the credibility of the witnesses and the weight to be given
their testimony.  State v. Ross,
32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). 
Finally, if the trial court's decision is correct on any theory of law
applicable to the case, we will uphold the decision.  Ross, 32 S.W.3d at 855-56; Singleton
v. State, 91 S.W.3d 342, 347 (Tex.App.--Texarkana 2002, no pet.).                

Standard
of Review for Affidavit in Support of Search Warrant

            As the Court of Criminal Appeals
recently reaffirmed, our jurisprudence recognizes a constitutional preference
for the warrant process in which police officers present their facts to a
neutral magistrate to decide if there is probable cause to issue that warrant.
 Rodriguez v. State, 232 S.W.3d
55, 61  (Tex.Crim.App. 2007);
Swearingen v. State, 143 S.W.3d 808, 811 (Tex.Crim.App. 2004) (Cochran, J.,
dissenting).  Rather than applying a de
novo review of a magistrate's probable cause finding, which is a question
of law, we must pay great deference to a magistrate's finding of probable cause
to encourage police officers to use the warrant process rather than making a
warrantless search and later attempting to justify their actions by
invoking  some exception to the warrant
requirement.   Rodriguez, 232
S.W.3d at 61.

To justify the issuance of a search warrant,
the affidavit submitted in support must set forth facts sufficient to establish
probable cause.  Probable cause to
support the issuance of a search warrant exists where the facts submitted to
the magistrate are sufficient to justify a conclusion that the object of the
search is probably on the premises to be searched at the time the warrant is
issued. Ramos v. State, 934 S.W.2d 358, 363 (Tex.Crim.App. 1996); Cassias
v. State, 719 S.W.2d 585, 587 (Tex.Crim.App. 1986) (emphasis added). When
the facts and circumstances within the knowledge of the  affiant, arising from a reasonably
trustworthy source, would warrant a person of reasonable caution to believe
that the items of contraband or evidence of a crime may presently be found in a
specified place, there is probable cause to issue a warrant to search that
place. Id. A search warrant affidavit must be read in a common sense and
realistic manner, and reasonable inferences may be drawn from the facts and
circumstances contained within the four corners of the affidavit. Id. at
587-88.

            Whether the facts mentioned in the affidavit are
adequate to establish probable cause depends on the totality of the
circumstances.  Ramos, 934 S.W.2d
at 362-63.  Statements made during a
motion to suppress hearing do not factor into the probable cause determination;
rather, we examine only the four corners of the affidavit to determine whether
probable cause exists.  Blake
v. State, 125 S.W.3d 717, 723 (Tex.App.Houston [1st
Dist.] 2003, no pet.)
(citations omitted). Cf. Cates v. State, 120 S.W.3d 352, 355 n.3
(Tex.Crim.App. 2003) (setting forth the distinction between a suppression
hearing and a Franks hearing where additional evidence may be admitted
to show the falsity of assertions within an affidavit).            

 

Franks
v. Delaware

            Under Franks, a defendant bears the burden of
showing by a preponderance of the evidence at a suppression hearing that an
affidavit contains a false statement made either knowingly and intentionally or
with reckless disregard for the truth.  Franks,
438 U.S. at 154.  The heart of the
decision in Franks goes to the proof of knowledge by a police officer
that the information he possesses is insufficient to support the issuance of a
warrant.  Ramsey v. State, 579 S.W.2d
920, 922 (Tex.Crim.App. 1979).  Any
affidavit sworn to with knowledge that the information in the affidavit is
false, or with reckless disregard of the truth of the information, cannot be
said to have been in good faith and in accordance with the law.  Id. 

Application to Facts

June
3, 2006 Warrant

            Appellant first challenges issuance
of the June 2006 warrant.  The State
argues appellant failed to preserve his appellate issue for our review, and we
agree.

            During the hearing on the defenses
motion to suppress, appellant contended the CZ pistol seized under the June
2006 warrant should be suppressed because the probable cause affidavit was
insufficient to support the search warrant. 
He specifically asserted it contained insufficient facts to show the gun
was located at appellants residence or to show the property listed in the
warrant was contraband.  He contended
also that officers exceeded the scope of the search warrant.[5]  Absent, however, from appellants contentions
at trial was the issue he raises on appeal, that the probable cause affidavit
in support of the June 2006 warrant contained material omissions.  This issue was not raised before the trial
court, and thus is not preserved for our review. A defendant's appellate
contention must comport with the specific objection made at trial. See
Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002) (appellate
contention must comport with that made at trial); Broxton v. State, 909
S.W.2d 912, 918 (Tex.Crim.App. 1995) (objection stating one legal theory may
not be used to support a different legal theory on appeal).

April
16, 2007 Warrant

            Appellant next argues the trial
court abused its discretion in denying his motion to suppress and in admitting
evidence of bullets and casings found during the search pursuant to the April
2007 warrant.  Appellant argues that the
affidavit was misleading because it wholly and intentionally omitted any
reference to the fact officers had seized the CZ 75 B pistol the previous June
or that it was submitted with the other two firearms for testing and omitted
the fact DPS had already conducted comparison of the casings found on the
Clampittes property with those fired from the CZ 75 B 9mm pistol.

            The Court of Criminal Appeals has
not yet determined whether a Franks analysis applies to omissions as
well as false statements.  Wise,
223 S.W.3d at 557, citing Massey v. State, 933 S.W.2d 141, 146
(Tex.Crim.App. 1996).  However, in Renteria
v. State, 206 S.W.3d 689, 704 (Tex.Crim.App. 2006), the Court assumed Franks
applies to omissions but concluded that even if information omitted from the
affidavit executed in support of a search warrant had been included, the
magistrate there still would have had probable cause to issue the warrant.

            We find the courts analysis in Renteria
applies also in this case.  Even had the
affidavit included the fact a CZ 75 B 9mm pistol had been recovered from
appellants house, and the fact tests indicated it was the murder weapon, the
magistrate still would have had probable cause to believe the spent shell
casings and bullets from target practice could be found on appellants
property.  And the inclusion of the
omitted facts would not have given the magistrate reason to believe other
statements in the affidavit were false, or to doubt the affiants good faith,
in view of appellants assertion his CZ pistol had been lost.  If tests showed similarities between shell
casings and bullets from appellants target practice with those from the
murder, or if they indicated the target practice was conducted with the CZ
pistol found in appellants house, appellant would be further connected to the
offense.  We see no abuse of discretion
in the trial courts denial of appellants motion to suppress, based on the
omission of facts from the affidavit.  See
Renteria, 206 S.W.3d at 703-04.   

            For the reasons discussed, we
overrule appellants first and second issues.         

Admission
of Photographs

            In appellants last issue, he
asserts the trial court erred in admitting several photographs he characterizes
as graphic and depicted the same subject matter as other exhibits.[6] We
disagree and find the trial court did not abuse its discretion in admitting the
photographs.

            The admissibility of a photograph is
within the sound discretion of the trial judge. 
Gallo v. State, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007), citing
Williams v. State, 958 S.W.2d 186, 915 (Tex.Crim.App. 1997).  Generally, a photograph is admissible if
verbal testimony as to matters depicted in the photograph is also
admissible.  Gallo, 239 S.W.3d at
762, citing Long v. State, 823 S.W.2d 259, 271-72 (Tex.Crim.App.
1991).  In other words, if verbal
testimony is relevant, photographs of the same are also relevant.  Gallo, 239 S.W.3d at 762.  Texas Rule of Evidence 401 defines relevant
evidence as evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.  Tex. R. Evid. 401.  A visual image of the injuries [a defendant]
appellant inflicted on the victim is evidence that is relevant to the jurys
determination.  Id.  The fact that the jury also heard
testimony regarding the injuries depicted does not reduce the relevance of the
visual depiction.  Id.  

            Rule 403, however, requires the
exclusion of otherwise relevant evidence when its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid. 403.  Rule 403
favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial.  Gallo, 239 S.W.3d at 762, citing Williams,
958 S.W.2d at 196.  A court may consider
several factors in determining whether the probative value of photographs is
substantially outweighed by the danger of unfair prejudice.  Id.  
These factors include, but are not limited to: (1) the number of
exhibits offered; (2) their gruesomeness; (3) their detail; (4) their size; (5)
whether they are black and white or color; (6) whether they are close-up; and
(7) whether the body is depicted naked or clothed.  Id. 
The availability of other means of proof and the circumstances unique to
each individual case must also be considered.[7]  Id.  However, photographs of a murder victim may
be admissible to show the manner and means of death, even if they merely
corroborate other kinds of evidence.  Moreno
v. State, 1 S.W.3d 846, 857 (Tex.App.Corpus Christi 1999, pet. refd); Bounkhoun
v. State, No. 07-07-0129-CR, 2007 WL 3254422 (Tex.App.Amarillo Nov. 5,
2007, no pet.) (mem. op., not designated for publication).  Finally, that a relevant picture is gruesome
does not alone require its exclusion from evidence.  Bounkhoun, No. 07-07-0129-CR, 2007 WL
3254422 at *1, citing Sonnier v. State, 913 S.W.2d 511, 519
(Tex.Crim.App. 1995).  After
independently evaluating all of these factors, we will reverse a trial courts
admission of photographic evidence only when the probative value of the
evidence is small and its inflammatory potential is great.  Ramirez v. State, 815 S.W.2d 636, 647
(Tex.Crim.App. 1991).  See also
Castilleja v. State, No. 07-06-0062-CR, 2007 WL 2163111 (Tex.App.Amarillo
July 24, 2007, pet. stricken) (mem. op., not designated for publication).

 

            More than fifty photographs were
introduced at trial. Appellant complains of nine photographs, contending they
should have been excluded because any probative value was outweighed by the
unduly prejudicial and cumulative nature of the pictures.   As an example, the first challenged exhibit,
States exhibit 91, shows the position of Clampittes body when it was found.
Some of his injuries are visible.  At
trial, appellant objected that the photograph had little probative value
because it was cumulative of States exhibit 6 that had been offered without
objection.  States exhibit 6 shows the
victim lying face-down on the ground but the wounds to the head cannot be
clearly seen. The second photograph of which appellant complains, States
exhibit 92, shows the victim lying face-down on the ground, fully clothed, with
a visible wound on his back through his shirt. 
Appellant argues on appeal that this photograph was cumulative of
States exhibit 55 and argues that it is inflammatory.  States exhibit 55 shows the victim lying
face-down on what appears to be a plastic tarp. 
The victim is not clothed and a wound on his back is clearly visible.  We find exhibit 92 is not cumulative because
it does not show the same aspects as exhibit 55.  Further, we find exhibit 55, admitted without
objection, more likely to be seen as gruesome and inflammatory than the
challenged exhibit.  Appellant makes
similar arguments with respect to the remainder of the nine challenged
photographs.

            On our review of the record, we find
the trial court did not abuse its discretion in admitting the nine
photographs.  We do not agree any of the
photographs are cumulative of those admitted without objection.  All of the photographs appellant challenges
here show the victim and his injuries from different angles and show various
views of the wounds Clampitte sustained that led to his death. See Ramirez
v. State, No. AP-75167, 2007 WL 4375936 (Tex.Crim.App. 2007) (not
published) (finding no abuse of discretion in ruling photographs were not
duplicative and their probative value not outweighed by prejudicial effect
where they showed body from different angles and views). We find none of the
photographs more gruesome than would be expected in this sort of crime.[8]  Gallo, 239 S.W.3d at 763, citing
Narvaiz v. State, 840 S.W.2d 415, 429 (Tex.Crim.App. 1992).   While we agree that the challenged
photographs portray the lifeless body of Clampitte and show his injuries, the
photographs do nothing more that portray the consequences of appellants
actions.  Castilleja, No.
07-06-0062-CR, 2007 WL 2163111 at *3. 
Photographs that depict the nature, location, and extent of a wound have
been declared probative enough to outweigh any prejudicial effect.  Montgomery v. State, 198 S.W.3d 67,
77-78 (Tex.App.Fort Worth 2006, pet. refd).                            

            We
conclude appellant has failed to establish that either the probative value of
the challenged photographs was small or that their prejudicial potential is
great.  The trial court did not abuse its
discretion in admitting the nine challenged photographs.  We overrule appellants last issue and affirm
the trial courts judgment.

                                                                                                                                                                                                                                                            James
T. Campbell

                                                                                                         Justice

Do
not publish.         











[1]See Tex. Penal Code Ann. § 19.02(b)(1)(2)
(Vernon 2003). 





[2] Officers seized twenty-five items pursuant to the warrant.  After a hearing on appellants motion to
suppress, the trial court overruled appellants motion, but, pursuant to the
States agreement, suppressed all evidence other than the CZ 9mm pistol and
ammunition in the pistol.  





[3]  See
Tex. Code Crim. Proc. Ann. art. 18.02(12) (Vernon 2003), providing, A
search warrant may be issued to search for and seize: . . . (12) contraband
subject to forfeiture under Chapter 59 of this code.  Article 59.01 defines contraband in relevant
part as property of any nature, real, personal, tangible, or intangible, that
is used in the commission of any first or second degree felony under the Penal
Code.  See Tex. Code Crim. Proc.
Ann. art. 59.01 (Vernon 2006).





[4]  See Tex. Code Crim. Proc. Ann. art. 18.02(10)
(Vernon 2003) providing A search warrant may be issued to search for and
seize: (10) property or items, except the personal writings by the accused,
constituting evidence of an offense or constituting evidence tending to show
that a particular person committed an offense.





[5] As noted, the State
eventually agreed the officers exceeded the scope of the warrant and all
evidence seized other than the CZ pistol was suppressed.





[6] The record reflects
appellant objected to States exhibits 91 through 102.  The trial court overruled appellants
objections to all but exhibit 102.  





[7] Courts have also held
that under Rule 403, the trial court must evaluate:  (1) the probative value of the evidence; (2)
the potential to impress the jury in some irrational, yet indelible, way; (3)
the time needed to develop the evidence; and (4) the proponents need for the
evidence.  Erazo v. State, 144
S.W.3d 487, 489 (Tex.Crim.App. 2004), citing Montgomery v. State, 810
S.W.2d 372, 389-90 (Tex.Crim.App. 1991) (op. on rehg).  See also  Casey v. State, 215 S.W.3d 870, 879-80
(Tex.Crim.App. 2007), citing Gigliobianco v. State, 210 S.W.3d 637, 641
(Tex.Crim.App. 2006).





[8] Photographs of a much
more prejudicial nature have been deemed admissible.  The State cites Salazar
v. State, 38 S.W.3d 141, 151-52 (Tex.Crim.App. 2001), stating the
photographs admitted here are much more benign than those in Salazar.  We agree with the States assessment.  See Salazar, 38 S.W.3d 152-53
(admitting, under the circumstances in that case, several pictures including
those of internal organs that had been removed from the victims body).